IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

No. 10-1304

NORRIS G. HOLDER,

Appellant,

v.

UNITED STATES OF AMERICA,

Appellee.

Appeal from the United States District Court
for the Eastern District of Missouri, Eastern Division,
The Honorable E. Richard Webber, District Judge

ADDENDUM TO APPELLANT'S REPLY BRIEF

Michael J. Gorla
720 Olive Street, Suite 1630
St. Louis, Missouri 63101
(314) 621-1617
(314) 621-7448 - Facsimile
E-mail: mjgorla@msn.com

Joseph W. Luby
Death Penalty Litigation Clinic
6155 Oak Street, Suite C
Kansas City, Missouri 64113
(816) 363-2765
(816) 363-2799 - Facsimile
E-mail: jluby@dplclinic.com

*Counsel for Appellant*

# TABLE OF CONTENTS – REPLY ADDENDUM

1. Index for Appellant's Appendix in *Parkus v. Delo*, Eighth Circuit Case No. 93-2992

2. Excerpts of Appellant's Brief in *Parkus v. Delo*, Eighth Circuit Case No. 93-2992

Appellate Case: 10-1304    Page: 2    Date Filed: 11/07/2011 Entry ID: 3847060

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

NO. 93-2922

STEVEN W. PARKUS,

Appellant,

v.

PAUL K. DELO,

Appellee.

APPENDIX

VOLUME 1 OF 3

Sean D. O'Brien (#30116)
MISSOURI CAPITAL PUNISHMENT RESOURCE
CENTER
5319 Rockhill Road
Kansas City, Missouri 64110
(816) 363-2795 · Fax: (816) 363-2799

Marianne Marxkors
Post Office Box 50313
St. Louis, Missouri 63105
(314) 382-1560

J. Steven Erickson
MOSER & MARSALEK, P.C.
St. Louis Place
200 North Broadway - Suite 700
St. Louis, Missouri 63102-2730
(314) 421-5364 · Fax (314) 421-5640

Attorneys for Appellant

Reply Add. 1

# APPENDIX

## INDEX

| TAB NUMBER | DESCRIPTION |
|---|---|
| | **Trial** |
| 1 | Voir Dire Examination |
| 2 | Proceedings:  Volume I (No. CR386-16F) |
| 3 | Proceedings:  Volume II (No. CR386-16F) |
| 4 | Proceedings:  Phase II (No. CR386-16F) |
| 5 | Movant's Second Amended Motion to Vacate, Set Aside, or Correct the Judgment or Sentence (No. CV688-1224CC) |
| | **29.15** |
| 6 | Memorandum in Support of Motion Under Rule 29.15 (No. CV688-1224CC) |
| 7 | Transcript of 29.15 Evidentiary Hearing (No. CV688-1224CC) |
| 8 | Findings of Fact, Conclusions of Law and Order (No. CV688-1224CC) |
| | **Direct Appeal** |
| 9 | Appellant's Statement, Brief and Argument (Mo. Sup. Ct. No. 69274) |
| 10 | Respondent's Statement, Brief and Argument (Mo. Sup. Ct. No. 69274) |
| 11 | Appellant's Statement, Reply Brief and Argument (Mo. Sup. Ct. No. 69274) |

Appellate Case: 10-1304     Page: 4 [1]  Date Filed: 11/07/2011 Entry ID: 3847060

12 Supreme Court Opinion
(Mo. Sup. Ct. No. 69274)


**Federal Habeas Corpus**

13 Second Amended Petition for Writ of Habeas
Corpus by a Petitioner in State Custody Under
a Sentence of Capital Punishment
(U.S.D.C.-E.D. No. 90-1007C(3)

14 Respondent's Response to Petitioner's Second
Amended Petition for Writ of Habeas Corpus
(U.S.D.C.-E.D. No. 90-1007C(3)

15 Traverse to Respondent's Response to
Petitioner's Second Amended Petition for Writ
of Habeas Corpus
(U.S.D.C.-E.D. No. 90-1007C(3)

16 Court's June 24, 1991, "Order" Granting,
Inter-Alia, Evidentiary Hearing
(U.S.D.C.-E.D. No. 90-1007C(3)

17 Respondent's Motion to Remove Proceeding from
Abeyance Docket and Motion for
Reconsideration of Order of June 24, 1991
(U.S.D.C.-E.D. 90-1007C(3)

18 Suggestions in Opposition to Respondent's
Motion to Remove Proceeding from Abeyance
Docket and to Reconsider Order of June 24,
1991

19 "Order" of April 22, 1992, Denying
Respondent's Motion to Remove Proceeding from
the Abeyance Docket and for Reconsideration
of Order of June 24, 1991

20 Respondent's Renewed Motion to Reconsider
Order Granting Petitioner an Evidentiary
Hearing

21 Suggestions in Opposition to Respondent's
Renewed Motion to Reconsider Order Granting
Petitioner an Evidentiary Hearing

22 Memorandum and Order of December 29, 1992,
Vacating the Court's Grant of an Evidentiary
Hearing and Denying Petitioner's Second
Amended Petition for Writ of Habeas Corpus

Appellate Case: 10-1304 Page: 5 2 Date Filed: 11/07/2011 Entry ID: 3847060

**Rule 59(e) Motion**

Petitioner's Motion to Alter or Amend Judgment or, in the Alternative to Reconsider the Court's Order of December 29, 1992, Denying Petitioner's Petition for a Writ of Habeas Corpus; Request for an Evidentiary Hearing and for Continuation of Stay of Execution

- Exhibit 1: Affidavit of Petitioner's Counsel, J. Steven Erickson;

- Exhbit 2: Rule 91 Petition for Writ of Habeas Corpus, (Missouri Supreme Court No. 74504);

- Exhibit 3: Motion to Recall the Mandate (Missouri Supreme Court No. 69274);

- Exhibit 4: Motion to Recall the Mandate (Missouri Supreme Court No. 71521);

- Exhibit 5: Affidavit of A.E. Daniel, M.D.;

- Exhibit 6: Report of William O'Connor, Ph.D., dated October 19, 1990;

- Exhibit 7: Report of Jonathan H. Pincus, M.D., dated February 19, 1992;

- Exhibit 8: Affidavit of Marianne Marxkors.

Supplementation of Petitioner's Motion to Alter or Amend Judgment or, in the Alternative to Reconsider the Court's Order of December 29, 1992 Denying Petitioner's Petition for a Writ of Habeas Corpus; Request for an Evidentiary Hearing and for Continuation of Stay of Execution

- Exhibit 5-A: An examination conducted December 23, 1968, by Mildred Berland, Ph.D., which detected evidence of sexual molestation of Mr. Parkus and that he was very unstable and may be psychotic;

- Exhibit 5-B: A psychiatric evaluation conducted February 25, 1969, by F. Crimi, Ph.D., diagnosing Mr. Parkus as a "borderline psychotic boy with possible borderline retardation."

Appellate Case: 10-1304     Page: 6     Date Filed: 11/07/2011 Entry ID: 3847060

- Exhibit 5-C: A psychological evaluation by Margori S. Baker, Ph.D., resulting in a diagnostic impression of psychosis with pseudomental retardation.

- Exhibit 5-D: A psychiatric history report dated June 28, 1971, by Aurora Amin, M.D., diagnosing Mr. Parkus as suffering from "Schizophrenia, Childhood Type and Mental Retardation, mild Psycho-social Environmental Deprivation."

- Exhibit 5-E: A psychiatric evaluation by J. Simeon, M.D., and staff diagnosing Mr. Parkus as having "Childhood Psychosis, Schizophrenia, Mental Retardation.

Second Supplementation of Petitioner's Motion to Alter or Amend Judgment or, in the Alternative to Reconsider the Court's Order of December 29, 1992 Denying Petitioner's Petition for a Writ of Habeas Corpus; Request for an Evidentiary Hearing and for Continuation of Stay of Execution

- Exhibit 9: Affidavit of Barbara Martin Viets; and

- Exhibit 10: Affidavit of Donald L. Catlett

Third Supplementation of Petitioner's Motion to Alter or Amend Judgment or, in the Alternative to Reconsider the Court's Order of December 29, 1992 Denying Petitioner's Petition for a Writ of Habeas Corpus; Request for an Evidentiary Hearing and for Continuation of Stay of Execution

- Exhibit 10-A: Conduct Violation and Report of Adjustment Board;

- Exhibit 10-B: Letter from Richard Bell to Robert Looten;

- Exhibit 11: Affidavit of Thomas J. Amolsch, Ph.D.;

- Exhibit 12: Psychology Service Report of David A. Jannick; and

Appellate Case: 10-1304    Page: 7    Date Filed: 11/07/2011 Entry ID: 3847060

-     Exhibit 13: Report of Psychological Evaluation of Jacqueline M. Wilson, M.S.

Fourth Supplementation of Petitioner's Motion to Alter or Amend Judgment or, in the Alternative to Reconsider the Court's Order of December 29, 1992 Denying Petitioner's Petition for a Writ of Habeas Corpus; Request for an Evidentiary Hearing and for Continuation of Stay of Execution

-     Exhibit 14: Affidavit of A. E. Daniel, M.D.

Respondent's Suggestions in Opposition to "Petitioner's Motion to Alter or Amend Judgment or, in the Alternative to Reconsider the Court's Order of December 29, 1992, Denying Petitioner's Petition for a Writ of Habeas Corpus; Request for an Evidentiary Hearing and for Continuation of Stay of Execution"

Reply to Respondent's Suggestions in Opposition to Petitioner's Motion Under Rule 59(e)

"Order" of June 4, 1993, Denying Petitioner's Motion Under Rule 59(e)

Notice of Appeal

Appellate Case: 10-1304    Page: 8    Date Filed: 11/07/2011    Entry ID: 3847060

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

---

## NO. 93-2922

---

## STEVEN W. PARKUS

Appellant,

v.

## PAUL K. DELO,

Appellee.

---

## APPELLANT'S STATEMENT BRIEF AND ARGUMENT

---

Sean D. O'Brien (#30116)
MISSOURI CAPITAL PUNISHMENT RESOURCE CENTER
5319 Rockhill Road
Kansas City, Missouri 64110
(816) 363-2795 ♦ Fax: (816) 363-2799

Marianne Marxkors
Post Office Box 50313
St. Louis, Missouri 63105
(314) 382-1560

J. Steven Erickson (#29973)
MOSER & MARSALEK, P.C.
St. Louis Place
200 North Broadway - Suite 700
St. Louis, Missouri 63102-2730
(314) 421-5364 ♦ Fax: (314) 421-5640

Attorneys for Appellant

Appellate Case: 10-1304    Page: 9    Date Filed: 11/07/2011 Entry ID: 3847060

## A.  MR. PARKUS' BACKGROUND AND CHARACTER.

The main issue at Mr. Parkus' trial for first degree murder was his background, character and mental condition.  A comparison between his true medical history and the trial evidence reveals that his trial was a complete breakdown of the adversarial system.  (See Addendum I).

### 1.  Early childhood abuse and neglect.

Steven W. Parkus was born July 22, 1960, to Linda and J.W. Parkus, both of whom were heavy drinkers.  Linda was prone to terrible mood swings.  She would not feed, diaper, or care for Steve and his younger brother, Chester.  Steve was "slow" in learning to walk and talk.[1]  On one occasion, Steve's mother locked him in the bathroom with Chester.  Steve climbed out the window and wandered around until a police officer found him and brought him home.  After the police left, Steve's mother heated a knife over the stove and burned his buttocks with the hot blade.  Bargmann, "The Making of a Murderer," St. Louis Magazine, (page 29, April 1988).

In November, 1967, Steve began living with his maternal great-aunt and uncle, Mr. and Mrs. Taylor Hampton.  (59(e) Motion, Ex. 5-E).  Steve exhibited a pattern of strange behavior, running away from home and getting lost on the way home from school.  On April 23, 1968, a report of parental neglect was made against Steve's natural parents, and on May 10, 1968 legal custody of Mr. Parkus was transferred to Mr. and Mrs. Hampton.  (59(e) Motion, Ex. 5-E.)  Mr. Hampton was an alcoholic, and his treatment of Mr. Parkus was described as abusive by several mental health examiners.  (59(e) Motion, Exs. 5, 6, 7 and 14).  Examples include:

> In [the Taylor home] he was brutalized; his uncle drank and beat him and his brother savagely and subjected them to unremitting sexual abuse. [Mr. Parkus] was beaten with a belt, with fists, and was hit on the head with a monkey wrench by the uncle who not only beat them but made his brother fight with him for his entertainment. . . . After the uncle became tired beating Steve, the boy was made to stand at the corner of the room with his nose in the corner, on his tip toes. If he moved, the uncle hit him with a belt. He was made to stand there for hours. He was subjected to sodomy by his uncle who forced him to perform oral sex and to submit to anal sex. On one occasion, his brother had

---

[1] Dr. Jonathan Pincus, M.D., a neurologist found Mr. Parkus has physical deformities and intellectual impairments that "are stigmata of maternal fetal alcohol effect," a deformity caused by the mother's excessive drinking during pregnancy.  (59(e) Motion, Ex. 7, p. 5).

2

Appellate Case: 10-1304     Page: 10     Date Filed: 11/07/2011 Entry ID: 3847060

lost the uncle's cigarettes, but the uncle thought it was Steve's fault and so told him to put his hand on the kitchen counter. Steve did not know what was coming and complied. The uncle then hit Steve's hand with a meat clever, nearly severing the right index finger at the base.

(59(e) Motion, Ex. 7, pp. 1-2). This examiner noted burn scars on Mr. Parkus' buttocks, and scars on his head and right index finger. Id., pp. 2 and 4. While raping Mr. Parkus, Hampton would explain to him that "if his aunt had behaved sexually as she was supposed to, it wouldn't be necessary. This made Mr. Parkus very angry at his aunt because it seemed as though she were egging on his uncle towards sexual thoughts and then not providing any outlet for them". (Id., p. 2).

While with the Hamptons, Mr. Parkus ran away from home or school about once a week; he was frequently found by the police and returned home. (59(e) Motion, Ex. 5-B).

## 2. Psychiatric treatment history.

On December 23, 1968, child welfare authorities sent Mr. Parkus to Dr. Mildred Berland, Ph.D., for a psychological evaluation. (59(e) Motion, Ex. 5-A). She described Mr. Parkus, as a "friendly, verbal little boy, 8 years, 5 months of age." She wrote, "The extent of his disturbance became readily apparent in the brief interview before the more structured examination. Thinking was loose and affect often inappropriate." Id. Intelligence testing placed Mr. Parkus in the "mental defective" range. Testing revealed that "his consciousness seems flooded with threatening, hostile thoughts and feelings to the point where ego functions like reality testing are adversely effected, possibly to the point of thought disorder." Dr. Berland suspected that Steve "had been molested during mother's numerous affairs." She concluded that "he is very unstable at this time and may be psychotic." She "strongly recommended" residential treatment. Id.

On February 25, 1969, at age 8, Mr. Parkus was admitted to St. Louis State Hospital for inpatient treatment. He was examined by a psychiatrist, Dr. F. Crimi, M.D. (59(e) Motion, Ex. 5-B). He noted a history of bizarre behavior "[since] kindergarten after he went to live with his relatives in November, 1967." Dr. Crimi observed that Mr. Parkus repeated the first grade twice, and at age 8, "speaks and talks like a boy of 4 or 5 years of age." It was reported that "Steve did not play with other children and had no friends." Dr. Crimi observed, "he doesn't

3

Appellate Case: 10-1304     Page: 11     Date Filed: 11/07/2011 Entry ID: 3847060

know how to play. He talks a lot but it makes no sense. He never asks for anything like toys, ice cream, donuts, etc. . . . . Mr. Parkus admitted running away very often, but said he did not know why. He said that he has bad dreams almost every night, about monsters who have fights inside his body.'" He also "talked about a big yellow monster and a huge spider and stated that this was not a dream, this was something real." He reported that he would like to grow up to be a doctor and a soldier "because he would kill the monsters." He also wanted to be a welfare person "because they help other people." Dr. Crimi concluded, "apparently this is a case of a borderline psychotic boy with possible mild mental retardation." He recommended in-patient treatment and placed Mr. Parkus on phenothiazine. An EEG yielded abnormal results indicative of brain damage. (59(e) Motion, Ex. 5-E).

Over the next two years, Mr. Parkus alternated between in-patient treatment and the Taylor home. In July and August of 1970, Dr. Marjorie S. Baker, Ph.D., tested him. He reacted to the Thematic Apperception Test "with extreme, phobic anxiety." Mr. Parkus' intelligence tested between the "dull normal" and "mentally defective range," suggesting that "Steve's is not a case of simple mental retardation, but that other factors are involved." Testing indicated "how highly important people are to Steve, a high degree of introjection and/or identification with others, and considerable creative potential." (Id., p. 2). However, "reality testing was inadequate." (Id., p. 3). Her "diagnostic impression is that of the symbiotic psychosis with pseudo mental retardation." She noted that "reality testing which may be adequate when stimulation is not too great, rapidly breaks down with increased stimulation and emotional arousal." She concluded that "the prognosis is reasonably favorable if Steve continues to receive the kind of therapy which he is currently receiving and utilizing." (Id., p. 4). Less than four months later, Mr. Parkus was readmitted for in-patient treatment at St. Louis State Hospital, in part to protect him from his uncle. (59(e) Motion, Ex. 5-D, p. 2). He was ten years old.

On June 28, 1971, Mr. Parkus was psychiatrically examined by Dr. Aurora Amin, M.D., who noted Mr. Parkus' documented history of bizarre behavior, getting lost on his way home from school, and fighting with his peers (59(e) Motion, Ex. 5-D). She observed that he "tended to be perseverative and concrete in his verbalization. He had poor peer relationships

4

**Reply Add. 10**

Appellate Case: 10-1304    Page: 12    Date Filed: 11/07/2011  Entry ID: 3847060

and functioned impulsively and quite immaturely at the level of a three year old." She also observed that "psychological tests reveal severe thought disorder in projective tests," and a full scale IQ of 69. Mr. Parkus was preoccupied with bizarre fantasies pertaining to ghosts and demons, and sometimes was easily confused and lost contact with reality. (Id., p. 1). Her diagnosis was "schizophrenia, childhood type and mental retardation, mild, psycho-social environmental deprivation." (Id., p. 2). She noted that his medication history included antipsychotic drugs such as Taractan, Mellaril, Dexetrine, Sodium Dilantin Suspension. At the time of the examination, he was receiving Mellaril. (Id.)

Mr. Parkus was discharged from the hospital on June 22, 1973, at age 12, with the expectation of continued out patient treatment. In his discharge summary, Dr. Jovan Simeon, M.D., a psychiatrist, noted that Mr. Parkus was "born and reared in a deprived environment, was frequently neglected until he was adopted by an aunt and an alcoholic uncle." (59(e) Motion, Ex. 5-E). He noted that Mr. Parkus "was frequently destructive for no apparent reason, appeared to have intelligence lower than normal, was unable to play with friends, and was never able to carry on a conversation normal for his age." While hospitalized, Mr. Parkus "continued to manifest sociopathic and psychotic behavior . . . [and] severe learning difficulties." (Id., p. 1). Symptoms noted upon admission included

> "severe motor activity, poor impulse control, perseveration and fragmentation of thought, bizarre and aggressive fantasies, confabulation and confusion of reality, concrete thinking, inappropriate emotional responses, mood lability, lack of appropriate sense of fears, . . . poor attention and memory, insomnia, lying, stealing, and destructiveness."

(Id.) Dr. Simeon observed that

> "due to a rather poor family situation, caused by his uncle's episodes of alcoholism, Steven was very ambivalent as to whether he wanted to go home for a weekend or stay on the ward. His adoptive parents cooperated very poorly with efforts on the part of the staff to conduct intensive family therapy . . . "

(Id.) Handwritten at the bottom of Dr. Simeon's report is the discharge diagnosis: "childhood psychosis." (Id.) None of the above history was known at the time of trial.

Appellate Case: 10-1304     Page: 13     Date Filed: 11/07/2011 Entry ID: 3847060

29.15 Legal File, p. 47). Ms. Viets was completely unaware of the existence of the St. Louis state hospital records. On February 9, 1989, the court denied the motion, and that order was affirmed on appeal. Parkus v. State, 781 S.W.2d 545 (Mo. banc 1989).

## E.    FEDERAL HABEAS CORPUS PROCEEDINGS.

Mr. Parkus filed a *pro se* petition for writ of habeas corpus in the United States District Court. While preparing the second amended petition, counsel found the records of St. Louis State Hospital, which included the examination reports of Drs. Crimi, Baker, Amin, Simeon and Berland. It was also discovered that the neurological examination that Dr. Jayaratna ordered was never done. Prison records were obtained, which indicated that Mr. Parkus had been the victim of sexual assaults during his incarceration, and that he and Mr. Steffenhagen had a sexual relationship. These matters were incorporated into a second amended petition for writ of habeas corpus. The Honorable William Hungate granted appellant's motion for hearing, but first ordered the proceeding held in abeyance while Mr. Parkus invoked available state remedies.

Dr. A.E. Daniel, upon reviewing the records of the St. Louis State Hospital, signed an affidavit stating that the reports of Drs. Berland, Crimi, Baker, Amin, and Simeon were unknown to him at the time of his pretrial examination:

> The above referenced data along with other detailed information about Mr. Parkus that was previously unknown to affiant cast significant doubt on the reliability and accuracy of an opinion that Mr. Parkus did not suffer from a mental disease or defect within the meaning of Chapter 552 of the RSMo. at the time of the homicide of Mark Steffenhagen.

(59(e) Motion, Ex. 5, p. 3). Dr. Daniel also notes that:

> A review of the report of the Fulton State Hospital evaluation reveals that Mr. Parkus was returned to the penitentiary before the neurological evaluation was completed. Affiant's pretrial report refers to a "complete medical and neurological workup" done at Fulton State Hospital, but affiant never saw the results of such an evaluation, and it would be wrong to conclude from this that Mr. Parkus was without any neurological abnormality. The data recently reviewed by affiant discloses an abnormal EEG in 1969 which shows evidence of brain damage.

(Id., pp. 2-3). A neuropsychological evaluation of Mr. Parkus in September, 1990, indicated a probability of brain damage. (Id.) A neurological examination by Dr. Jonathan Pincus, M.D.,

14

Appellate Case: 10-1304    Page: 14    Date Filed: 11/07/2011 Entry ID: 3847060

Chairman of the Department of Neurology at Georgetown University, found that Mr. Parkus suffers from brain damage which renders him unable to control his impulses (59(e) Motion, Ex. 7, p. 6). After further examination, and based on a complete history, Dr. Daniel found that Mr. Parkus suffers from chronic undifferentiated schirzophrenia, organic delusional disorder, post traumatic stress disorder and mild mental retardation. This condition satisfies the test for insanity under Missouri penal statutes. (59(e) Motion, Ex. 14). Mr. Catlett signed an affidavit admitting that a reasonable investigation would have disclosed the reports of the treating physicians who found Mr. Parkus to be seriously mentally ill. He admits that he should have secured these records for the pretrial examiners. Although trial counsel attempted to obtain the prison file of Mr. Parkus, he was unsuccessful because it had been removed from the prison by prosecutor. (59(e) Motion, Ex. 10). Mr. Catlett concludes:

> . . . the information . . . would have had a dramatic effect on the outcome of Mr. Parkus' trial in the guilt and/or penalty phases. The jury was given the impression that Mr. Parkus was an antisocial sociopath who preyed on those he perceived to be weaker than himself. The reality, if properly investigated and presented, unhampered by misrepresentations of state officials including the DYS personnel and the prosecuting attorney's office's withholding of exculpatory and/or mitigating evidence, would have demonstrated that Mr. Parkus was a psychotic, brain damaged individual with mental retardation who had long been abused by a system created to protect him.

(Id.) Ms. Viets signed an affidavit explaining that because of "the strict time limitations imposed by Rule 29.15 and the motion court's denial of her request for a continuance," she "had insufficient time to conduct a complete investigation of Mr. Parkus' case to uncover claims that were not then known to him." Neither she nor Mr. Parkus knew that prison records would contain information relevant to his defense. (59(e) Motion, Ex. 9).

The district court ordered that Mr. Parkus be allowed to exhaust available state remedies. Appellant filed in the Missouri Supreme Court a petition for writ of habeas corpus pursuant to Missouri Rule 91 presenting the claims raised herein. (59(e) Motion, Ex. 2). Appellant also moved the Missouri Supreme Court to recall its mandate on the direct appeal and on the appeal of his Rule 29.15 motion. (59(e) Motion, Exs. 3 and 4). The Missouri Supreme Court denied the petition for writ of habeas corpus:

Appellate Case: 10-1304    Page: 15    Date Filed: 11/07/2011 Entry ID: 3847060

Relator's petition for writ of habeas corpus discloses no ground for relief that could not have been asserted either in the initial appeal or in a motion filed pursuant to Rule 27.26 or Rule 29.15, all of which have been finally determined or are now procedurally barred, and said petition discloses no other ground that is not procedurally barred.

The petition for writ of habeas corpus is denied. All further claims for relief in the courts of Missouri are procedurally barred.

State ex rel. Parkus v. Delo, No. 74504 (Mo., January 28, 1992) (unpublished order). The Court entered an order in each of the appellate cases which stated simply that "appellants' motion to recall the mandate is overruled." State v. Parkus, No. 69274 (Mo. August 6, 1991) (unpublished order).

The state moved to set aside Judge Hungate's order granting a hearing. Judge Hungate denied the motion, and the state twice moved to reconsider. Judge Hungate denied the first motion to reconsider. Upon the retirement of Judge Hungate, this matter was assigned to the Honorable Donald Stohr. On December 29, 1992, Judge Stohr entered an order dismissing the petition for writ of habeas corpus, setting aside Judge Hungate's order granting an evidentiary hearing and overruling appellant's motion for the appointment of co-counsel.

Mr. Parkus' petition was denied primarily on procedural grounds. Appellant moved under Rule 59(e) to reconsider, and submitted the affidavits of witnesses who would have testified at a hearing. The court on June 4, 1993, denied the motion, and appellant on July 6, 1993, filed his notice of appeal.

### ARGUMENT I

**MISSOURI'S REFUSAL TO RULE ON MR. PARKUS' CONSTITUTIONAL CLAIMS IS NOT BASED ON GROUNDS THAT ARE INDEPENDENT OF THE VIOLATIONS OF MR. PARKUS' CONSTITUTIONAL RIGHTS, AND ARE NOT AN ADEQUATE BASIS FOR REFUSING TO ENFORCE THE CONSTITUTION.**

The federal courts' obligation to defer to state judgments that rest on procedural grounds depends upon the state's "good faith attempts to honor constitutional rights." Engle v. Isaac, 456 U.S. 107, 128 (1982) *(emphasis added)*. The State of Missouri must provide appellant with a constitutionally adequate procedure before appellant's failure to comply with

16

Appellate Case: 10-1304    Page: 16    Date Filed: 11/07/2011 Entry ID: 3847060

**CERTIFICATE OF SERVICE**

I hereby certify that on November 7, 2011, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following: Mr. Steven Holtshauser, Mr. Joseph M. Landolt, and Mr. John M. Bodenhausen, Assistant United States Attorneys, 111 South 10th Street, 20th Floor, St. Louis, Missouri 63102.

/s/ Joseph W. Luby
*Attorney for Appellant*