| | | | |
|---|---|---|---|
| NORRIS G. HOLDER, | ) | | |
| | ) | | |
| Petitioner-Appellant, | ) | | |
| | ) | | |
| v. | ) | No. | 10-1304 EMSL |
| | ) | | |
| UNITED STATES OF AMERICA, | ) | ***THIS IS A CAPITAL CASE*** | |
| | ) | 28 U.S.C. § 2255 | |
| Respondent-Appellee. | ) | | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
HOLDER'S PETITION FOR REHEARING AND REHEARING EN BANC**

**COMES NOW** the United States of America, by and through its attorneys, Richard G.

Callahan, United States Attorney for the Eastern District of Missouri, and John M. Bodenhausen,

Assistant United States Attorney for said District, and in accordance with this Court's Order,

dated, November 12, 2013, respectfully submits the following response in opposition to Holder's

Petition for Rehearing.

**INTRODUCTION & BACKGROUND**

The present matter relates to a single issue, which Holder first presented to the District

Court in a reply to the government's response in opposition to Holder's motion under Fed. R.

Civ. P. 59(e) (motion to alter or amend District Court's denial of Holder's motion under 28

U.S.C. § 2255). The issue was whether counsel should have obtained a specialized trauma

expert. Holder did not timely place before the District Court the facts and arguments he now

urges this Court to consider. Nonetheless, the panel considered those facts and arguments and

still affirmed the District Court.

Holder has not met his burden under Rules 35 and 40 to justify panel or en banc

rehearing. The panel's decision does not conflict with any decision of the Supreme Court or this

1

Court.  Likewise, Holder has failed to present a question of exceptional importance.  The panel

did not overlook or misapply any law or facts in issuing its decision.  There is no reason to rehear

this case.  Further, this Court should strike the Declaration of Dr. Lebowitz that Holder filed with

his petition.

**A.**      **The Record Evidence Before The District Court**

The history of this matter is well documented.  See Holder v. United States, 721 F.3d 979

(8th Cir 2013); see also United States v. Allen et al., 247 F.3d 741 (8th Cir. 2001).[1]  A fairly

detailed review of the record will help to understand the context behind Holder's mental health

claim – both as timely presented, and as revised after he lost his § 2255 motion.

There can be no dispute that defense counsel faced a nearly impossible task in defending

Holder.  Id. at 980.  Holder was the planner, organizer, and leader of a violent, take-over style

bank robbery that also involved Billie Allen.  The bank security guard, Mr. Heflin, was executed

almost immediately.  Holder claimed he robbed the bank so that he could buy a new prosthesis

for a foot that had been amputated during a train accident in his youth.  The government argued

that Holder robbed the bank to pay for his defense on drug charges.  Holder's plan included,

*inter alia*, robbing a bank he knew and had cased beforehand, using loaded assault rifles with

bullets designed to penetrate police cars, wearing a bullet proof vest, and using multiple staged

getaway cars (two stolen and one rigged to burn and destroy evidence) to avoid apprehension.

The evidence showed that both Holder and Allen fired their rifles upon entering the bank and

both fired multiple shots, some in the direction of people in the bank.  The evidence showed that

Mr. Heflin was shot multiple times.

---

[1] The government recognizes that this opinion was vacated when the Supreme Court granted
certiorari.  See Allen v. United States, 536 U.S. 953 (2002).  The opinion is referenced because it
provides a detailed account of the facts and background of Holder's case.

One of the main reasons Holder's plan failed was that an alert person at the bank during the robbery called 911 and followed the getaway van to a local park where the van had caught fire. Holder was apprehended and admitted planning the robbery but denied any intention that anyone be shot or killed.

Against this backdrop of overwhelming evidence, both the defense team and the government had Holder evaluated by two fully qualified psychologists. Defense counsel knew that Holder had suffered numerous traumas and hardships in his life, including that Holder lost part of his leg in a train accident, and had suffered a head injury when he was struck by a brick. As a result, defense counsel hired Dr. Rothke, who evaluated Holder in terms of neuropsychology and rehabilitation psychology.[2] Among the factors Dr. Rothke considered were the effects of several traumas in Holder's life, including Holder's train accident and head injury. Dr. Rothke was also aware that Holder claimed he planned the robbery so he could buy a better prosthetic leg. The government's expert, Dr. Wetzel, also performed a thorough neuropsychological exam. Appx. at 158-98.

The record before the District Court showed that these examinations were comprehensive and detailed. Both doctors interviewed Holder and considered his medical and personal history, including information provided by friends and family. Both doctors conducted extensive tests, including standardized tests, to determine whether Holder exhibited signs of impairment.[3]

---

[2] Dr. Rothke's report is at Appx. Vol. 1 at 147-57 (hereinafter referred to as "Appx.").

[3] The record shows these doctors considered all of the known relevant facts and circumstances of Holder's life. These circumstances included, *inter alia*, Holder's alleged childhood seizures, medical history, family circumstances, and the referrals for psychological evaluation after his train accident, and other "stressful events." See, e.g., Appx. at 147-48, 152, 202-04, 207, 212-13 (information considered by Dr. Rothke); 159-62 (information considered by Dr. Wetzel); 164 (Dr. Wetzel considered brain injury, cognitive impairment, and neuropsychological testing; he noted that three neuropsychologists failed to find any deficits regarding Holder's mental status); 170 (Dr. Wetzel probed Holder's denials and did not simply rely on answers given); 169-70

Dr. Rothke was given a copy of Dr. Wetzel's report and he found no fault in it. He testified that Dr. Wetzel's analysis complemented his own. Both expert psychologists concluded that Holder suffered from no mental defects or impairments, no brain damage, and that Holder knew what he was doing when he planned the crime and when he robbed the bank. Appx. at 207-08. Dr. Rothke's testimony during the penalty phase corroborated Holder's claim that he robbed the bank to get money to buy a new prosthesis. Id. at 218-19.

In addition to Dr. Rothke's testimony, defense counsel presented Holder's life history to the jury through the use of lay witnesses. Another psychologist, Dr. Reidy, examined Holder for his "future dangerousness." Dr. Reidy considered the reports of both Drs. Rothke and Wetzel and found "nothing in their 'very similar' reports to indicate that Holder might have a mental illness." Order Denying § 2255 Relief, at 24. Counsel's mitigation presentation was so well done that the very experienced District Judge characterized it as masterful. Id. at 36; see also Holder, 721 F.3d at 996 (citing same).

**B.      Holder's Mental Health Claim As Timely Presented To The District Court**

In 2003, Holder filed his § 2255 motion. Holder alleged that his counsel was ineffective for failing to investigate his mental condition (ground 12C(f)).[4] Holder claimed that counsel was ineffective for failing to uncover that Holder allegedly suffered from brain damage at the time of the offense, and for failing to have a full neuropsychological exam performed. In this context, Holder argued that counsel was deficient in not seeking the opinion of another psychologist who

---

(Holder told Dr. Wetzel that he spent a lot of time planning his robbery); 175-76 (Dr. Wetzel found no PTSD and considered Holder's alleged history of seizures).

[4] Appx. at 32. Holder was represented by Charles Shaw (now deceased) and Jennifer Herndon (nee Brewer). Regarding the present issue, Holder refers to the performance of Ms. Herndon.

had been authorized but not used – Dr. Semone.  Holder's theory was that Dr. Semone would have contradicted and questioned the findings of Drs. Wetzel and Rothke.[5]

In opposition to Holder's § 2255 motion, the government submitted the evidence outlined above regarding the evaluations of Drs. Rothke and Wetzel.  The record conclusively refuted Holder's allegations and showed counsel made more than a reasonable effort to assess Holder's mental and cognitive abilities.  The record showed, contrary to Holder's allegations, that these doctors looked for evidence of brain damage and conducted thorough neuropsychological examinations which specifically considered trauma-related conditions.  The record further showed that Holder's attorney was fully aware that he had received a full neuropsychological examination, had been evaluated for evidence of brain injury, and that no significant problems were found, despite extensive analysis and testing.  In fact, Dr. Rothke testified as much during the penalty phase, and agreed with Dr. Wetzel's conclusion that Holder's brain functioned "well within normal limits."  Appx. at 202-08.  Moreover, the District Court also considered that Dr. Reidy, a fully qualified forensic psychologist, evaluated Holder for "future dangerousness" and found no problems.[6]

Holder filed a reply to the government's response.  Holder's focus remained that counsel was constitutionally deficient in failing to seek the opinion of Dr. Semone.  Holder did not advise the District Court that his theory was really based on an alleged failure to seek a specialized trauma assessment or that counsel overlooked so-called "red flags."  Holder's reply did not address the volume of record evidence showing that not one, but three detailed and mutually consistent mental health evaluations had been performed.  See Appx. at 252.

---

[5] As the government pointed out in its brief, the timeline of events does not support Holder's claims regarding the purpose of using Dr. Semone.  Even so, the panel considered Holder's argument regarding Dr. Semone and rejected it.  See Holder, 721 F.3d at 994-95 n.12.

[6] Dr. Reidy reviewed Dr. Rothke's report and had no issues with it.  Holder, 721 F.3d at 997.

With the case fully briefed and the record before it, on December 2, 2004, the District Court concluded that it did not need the benefit of a hearing to decide Holder's mental health claim. Appx. at 266. On July 22, 2008, the District Court issued a 100-page Memorandum and Order denying Holder's § 2255 motion in its entirety. See Order Denying § 2255 Relief.

**C.      Holder's New Mental Health Claim – As Raised In A Rule 59(e) Motion**

On August 8, 2009, Holder filed a Rule 59(e) motion, asking the District Court to alter or amend its judgment. For the first time, Holder alleged that his counsel was deficient in failing to seek a specialized trauma assessment (despite the trauma evaluation conducted by Dr. Rothke). The government opposed the Rule 59(e) motion, and urged the District Court not to consider information and arguments that could have, but were not, tendered before the District Court ruled on Holder's § 2255 motion. Holder filed a reply to the government's opposition. It was in his reply that Holder first proffered Dr. Lebowitz as a trauma expert in this matter. Dr. Lebowitz's report was merely speculative because, unlike Drs. Rothke, Wetzel, and Reidy, she never personally met and evaluated Holder.[7]

The District Court rejected Holder's Rule 59(e) motion, noting the impropriety of raising new arguments that could have been raised before the Court entered judgment. See Order Denying Rule 59(e) Motion at 4.[8] Nonetheless, the District Court considered Holder's new arguments and found that they were refuted by the existing record. Id. at 22-27, 37 and n.10.

---

[7] Dr. Lebowitz's declaration in the District Court relied, in part, on a study that was not published until years after Holder's trial. Appx. at 639. Therefore, Dr. Lebowitz's declaration was not only untimely, it was also arguably irrelevant.

[8] See also Holder, 721 F.3d at 986 (explaining that Rule 59(e) cannot be used to "introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment") (internal quotations and citations omitted).

**D.** **The Panel Decision**

The panel in this case concluded that the District Court did not err in denying a hearing on Holder's mental health claim. The panel considered Holder's claim as timely filed and presented to the District Court, as well as the trauma claim that first surfaced in Holder's Rule 59(e) motion. The panel distinguished Holder's situation from those found in Wiggins and Sinisterra,[9] upon which Holder has relied to support his mental health claim. Like the District Court, the panel concluded that "Holder's counsel left no stone unturned." 721 F.3d at 996 (noting that the District Court had found counsel's "penalty phase evidence was masterfully presented"). A key to the panel's decision was that two qualified defense psychologists "already concluded that Holder did not suffer from any psychiatric disorders or deficiencies." Id. (citing favorably to Cole v. Roper, 623 F.3d 1183 (8th Cir. 2010)).

The panel also explained that Holder's revised mental health argument – the trauma-based argument – failed on the record because Holder did not show that either Dr. Rothke or Dr. Reidy "lacked the 'relevant skills, credentials, and professional experience' to conduct an adequate evaluation of the events that shaped [Holder's] life." Id. at 997. "Given [the defense experts'] credentials and the breadths of their evaluations, nothing in the record supports Holder's" trauma expert claims. Id. at 998.

Like the District Court, and with the benefit of the record, the panel found Holder's counsel was not constitutionally deficient regarding Holder's mental health. The panel also concluded that even if Holder's counsel had obtained another, more favorable opinion, there was no prejudice because the outcome would not have changed. Id. In so doing, the panel again relied on the record evidence. That evidence showed Holder was aware of the dangerousness of

---

[9] Wiggins v. Smith, 539 U.S. 510 (2003) and Sinisterra v. United States, 600 F.3d 900 (8th Cir. 2010) " involved counsel's complete, or near complete, failure to investigate and present mitigation evidence relating to . . . backgrounds and mental capacities." Holder, 721 F.3d at 996.

his actions based on the detailed planning that involved a near certainty that violence would erupt. The panel noted the undisputed facts that Holder used a ballistic vest, assault rifles, special bullets, and a getaway car doused in gasoline. Id. Like the District Court, the panel further concluded that the jury's rejection of Holder's mitigating factors solidified its conclusion.

### E. Holder's Petition For Rehearing

In his petition for rehearing, Holder does not take issue with the panel's conclusion that his counsel was not deficient in not seeking assistance from Dr. Semone. Rather, Holder submits even more new evidence, in the form of another declaration from Dr. Lebowitz. Holder suggests that this new declaration is submitted solely to demonstrate the evidence he would present if he were granted a hearing. Dr. Lebowtiz's analysis is, by its own terms, incomplete. For example, at the outset she admits that her declaration does not "represent a complete trauma assessment," and that "multiple, iterative interviews" are still needed. She further characterizes her assessment as "very much preliminary." See Holder Exh. 2 at 1, 12, 15, 18, 58, 64. Thus, as argued below, even with the benefit of hindsight and years of unsuccessful arguments to learn from, Holder still has not proffered anything other than preliminary information that might, someday, contradict the expert opinions of three qualified psychologists who actually evaluated Holder near the time of the crime and in the context of the trial. Holder's ever changing yet never succeeding post-conviction strategy speaks volumes to the adequacy and reasonableness of counsel's performance in this case.

Consistent with Holder's petition for rehearing, the government focuses its arguments on the alleged failure to hire a trauma expert.

<u>**ARGUMENT**</u>

<u>**The Record Affirmatively Refuted Holder's Mental Health Claim And, Therefore, The Panel Correctly Affirmed The District Court's Denial Of That Claim Without A Hearing.**</u>

A district court may deny a § 2255 petitioner an evidentiary hearing if the record demonstrates he is not entitled to relief on his claim. <u>See</u> <u>Holder</u>, 721 F.3d at 993 (quoting <u>Anjulo-Lopez v. United States</u>, 541 F.3d 814, 817 (8th Cir. 2008)). A hearing may be denied "where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." <u>Id.</u>[10]

Holder's mental health claim has been a moving target. Nonetheless, the District Court and the panel considered both versions of Holder's mental health claim and concluded that the record refuted Holder's claim and, in any event, Holder suffered no prejudice.

**A.**     **The record affirmatively refutes any possible claim that counsel's mental health investigation was unreasonable or in any way constitutionally deficient.**

The record regarding the mental health investigation is discussed in great detail above. Holder was evaluated by three qualified psychologists. He received a full neuropsychological evaluation. The evaluations included hours of personal interviews, a review of Holder's medical and personal history, the administration of numerous standardized tests, and a review of each other's reports. The evaluations did not, as Holder has suggested, rely on self-reporting. The psychologists considered issues of trauma, brain damage, and the possibility that Holder may have acted impulsively. All three psychologists found that Holder suffered from no significant mental defects or problems.

---

[10] <u>See</u> <u>also</u> <u>Sanders v. United States</u>, 341 F.3d 720, 722 (8th Cir. 2003) ("A § 2255 motion can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.") (internal quotations omitted).

The record also conclusively shows that Holder's counsel was aware of the testing conducted by the experts and their respective and consistent conclusions. What the record also shows is that Holder claimed he planned the robbery to obtain funds for a new prosthetic leg. Holder's counsel presented Dr. Rothke's testimony to corroborate that claim. Thus, the record shows without any doubt that Holder's conduct was carefully calculated and not impulsive. Further, the record shows that counsel presented Holder's life history using lay witnesses. That makes perfect sense given the findings of the three psychologists who actually examined Holder.

What is left after one considers the record is a claim that, with the benefit of hindsight, something else might have been done that might have resulted in a different outcome. Strickland, however, precludes such speculative hindsight analysis. See, e.g., Hood v. United States, 342 F.3d 861, 863 (8th Cir. 2003); see also Strickland v. Washington, 466 U.S. 668, 689 (1984). Further, and perhaps more to the point, the Sixth Amendment does not require counsel to "continue shopping for a psychiatrist until a favorable opinion is obtained." Forsyth v. Ault, 537 F.3d 887, 892 (8th Cir. 2008) (rejecting claim that favorable opinion obtained after conviction renders counsel's conduct unreasonable). An adequate and reasonable mental health investigation does not require a perfect investigation or a particular opinion or result. Given enough time and the benefit of learning from failed strategies, one might presume that a better strategy might someday emerge. As explained below, however, Holder still has offered only speculation as to what might reasonably have been done differently in his case.

As the panel correctly concluded, and given the extensive and conclusive record before the District Court, there was no reason to conduct a hearing on Holder's mental health claim. The record demonstrated that Holder's counsel acted reasonably and was not constitutionally deficient regarding her mental health investigation. It was reasonable to proceed on the basis of

10

the three, consistent expert opinions already available. The situation was much more akin to that in <u>Cole v. Roper</u>, 623 F.3d 1183 (8th Cir. 2010), than the "complete, or near-complete, failure to investigate and present mitigation evidence relating to petitioners' backgrounds and mental capacities," found in <u>Wiggins</u>, and <u>Sinisterra</u>. <u>See</u> <u>Holder</u>, 721 F.3d at 996.

**B.     Even fifteen years after his trial, Holder still has not proffered evidence to refute the record.**

As mentioned above, after the government responded to his Rule 59(e) motion, Holder tendered a new expert to the District Court – Dr. Lebowitz. Dr. Lebowtiz's declaration was submitted to the District Court only after the Court had denied Holder's claim. It was submitted more than ten years after Holder's trial and with the benefit of years to develop a post-conviction strategy. Yet even then, that declaration was unreliable and speculative because Dr. Lebowitz never met with or personally evaluated Holder.

Holder has taken a similar strategy with this Court. With his petition for rehearing Holder submitted a 60-plus page, new declaration of Dr. Lebowitz. Now, fifteen years after trial, five years after the District Court denied Holder's claims, and months after his case was argued and decided by the panel, Dr. Lebowitz personally met Holder. This Court should strike Dr. Lebowitz's declaration as untimely and irrelevant.[11]

In a footnote, Holder asks this Court to consider Dr. Lebowitz's declaration for the limited purpose of showing what evidence it would present to the District Court if a hearing were granted. The problem with this position is that, even now, Dr. Lebowitz has not offered anything other than speculation. By her own admission, Dr. Lebowitz's analysis is incomplete and merely

---

[11] The government has found no reported, similar cases in which a losing party attempted to file new evidence with a petition for rehearing. If such evidence cannot be considered with a Rule 59(e) motion before a district court, <u>see</u> <u>Holder</u>, 721 F.3d at 986, it seems equally reasonable that such evidence not be considered in the present context.

preliminary. <u>See</u> Holder Exh. 2 at 1, 12, 15, 18, 58, 64. Thus, it would not only be contradicted by the existing record and woefully untimely, it would be unhelpful and inadmissible.

In a very real sense, Dr. Lebowitz's declaration actually vindicates the District Court's decision not to grant a hearing and, therefore, the panel decision in this matter. The fact that some fifteen years after the trial, nine years after the District Court announced which issues would receive an evidentiary hearing, five years after Holder's mental health argument was denied, and months after this Court affirmed the District Court, the best Holder can offer is an incomplete and speculative declaration that counsel should have recognized a variety of "red flags" which were somehow missed by three other, well-qualified mental health experts who examined Holder personally near the relevant time in question.

Holder's case was tougher than most to defend because by his own admission he planned the robbery in detail. That planning involved obtaining and using assault rifles, a bullet-proof vest, and an elaborate getaway scheme. The robbery also was planned, at least according to Holder, for a specific purpose – to obtain funds to buy a new prosthesis (he even selected a particular model). Adding even more difficulty, two thorough and complementary neuropsychological evaluations by Drs. Rothke and Wetzel found that Holder was normal in all of his mental and cognitive abilities. A third evaluation by Dr. Reidy likewise found no issues and, in fact, concluded that Holder was not likely to pose a danger in prison. Dr. Reidy considered Dr. Rothke's report and had no disagreement with it.

Perhaps the most critical flaw in Holder's argument that there were obvious "red flags" which somehow announced a need for a trauma assessment is that, even with the full benefit of new habeas counsel and five years to prepare, he did not raise the issue when he filed his § 2255 motion. Had such red flags truly existed, surely habeas counsel – with the benefit of time and

hindsight – would have raised them in the § 2255 motion. Yet even habeas counsel did not raise the trauma argument until the Rule 59(e) motion – ten years after trial, and only after the record conclusively refuted his original mental health claim.

What Holder really is asking this Court for is a "do over" of his § 2255 strategy. In so doing, he offers the tardy, speculative, and inchoate analysis of Dr. Lebowitz. The panel's decision is correct. There is no reason to rehear this matter on the basis of the evidence Dr. Lebowitz might someday be able to offer.

**C.      Even if one considers Holder's "trauma" argument, the record shows that the outcome would not have changed and, therefore, Holder suffered no prejudice.**

Given that the record conclusively refutes Holder's claim that counsel's performance was constitutionally deficient, there is no reason to consider prejudice. See Williams v. United States, 452 F.3d 1009, 1012-13 (8th Cir. 2006). Nonetheless, even though both the District Court and panel found counsel's performance to be reasonable, they both considered the issue of prejudice and found none. Holder, 721 F.3d at 998. There is no reason to rehear this matter on the basis of alleged prejudice.

As demonstrated above, even if another trauma expert had been secured, and that expert proffered an actual opinion regarding Holder's ability to appreciate the dangerousness of his conduct, there is no reasonable probability that, but for counsel's allegedly deficient performance, the outcome would have been different. See Strickland, 466 U.S. at 695.[12] As the panel and District Court both noted, a reasonable jury would have rejected such a claim in view of the overwhelming evidence showing "Holder's preparations for the bank robbery." Holder,

---

[12] "A reasonable probability is a probability sufficient to undermine the confidence in the outcome." Id. at 699. Prejudice requires a showing "that counsel's errors were so serious that they rendered the proceedings fundamentally unfair or the result unreliable." See Bucklew v. Luebbers, 436 F.3d 1010, 1016 (8th Cir. 2006). Prejudice is viewed in the context of a particular record. See Jones v. Roper, 311 F.3d 923, 926 (8th Cir. 2002).

721 F.3d at 998. Those preparations included, obtaining and using assault rifles with armor piercing bullets, obtaining and using a bullet-proof vest, staging multiple getaway cars – two of which were stolen and one of which was rigged to burn, and robbing a bank with which Holder had intimate knowledge. Id. Further, Holder claimed that he robbed the bank for a specific purpose – to obtain money for a new prosthetic leg. Such evidence shows not only the ability to plan a robbery, but also a plan that contemplated at least a high risk of danger and violence. There was nothing spontaneous about Holder's robbery.

The panel, like the District Court, buttressed its conclusion by noting "the jury's unanimous negative findings" on two of Holder's mitigating factors – "(1) that Holder did not fire the shots that resulted in Heflin's death and (2) that Holder did not intend for any person to be killed." Id. "Given these findings, as well as the testimony and circumstantial evidence that Holder fired shots inside the Bank," Holder's claim that another psychological evaluation would have altered the result in his case fails. Id.

In his petition, Holder focuses on one of these two mitigating factors – the jury's negative finding on Holder's claim that he did not fire the shots that killed Mr. Heflin. Holder refers to this finding as an "evidentiary fluke" and describes the jury as "fact impaired." Petition at 14-15. That finding was not a fluke. There was evidence that Holder fired his weapon in the bank and was the leader and organizer of the robbery. Given Holder's consistent argument that he never fired at all, it is likely no juror was willing to credit this as a mitigating fact. Moreover, at trial, the government argued against this mitigating fact. See Trial Tr. Vol. 12, 185-88. Thus, the negative finding was rational in full context. See also United States v. Fuller, 374 F.3d 617, 623 (8th Cir. 2004) (inconsistent verdicts are not objectionable).

Holder's argument ignores the jury's rejection of the other mitigating factor relied on by the panel – that he did not intend for any person to be killed. This finding, under any view of the record, was <u>not</u> a fluke or counterfactual. Rather, this finding was consistent with the evidence showing that Holder planned and carried out a violent, take-over style bank robbery which Holder had to know entailed a serious risk of harm.

Finally, the government again notes Holder offers only an incomplete and preliminary glimpse of what a trauma assessment might reveal. That glimpse was created after years and years of litigation. In other words, even now, Holder offers little more than speculation of what a trauma expert might determine, if given even more time. This Court has held that such a failure of specific information is fatal to a § 2255 claim. <u>See</u> <u>Rodela-Aguilar</u>, 596 F.3d 457, 462 (8th Cir. 2010) (reversing grant of relief and explaining that an ineffective assistance claim "based on the failure to call an expert" requires specific information of what the expert would say in order to show prejudice).

The record conclusively refutes Holder's mental health claim, even in its new form. The panel correctly affirmed the District Court's denial of an evidentiary hearing.

**WHEREFORE**, the Government respectfully requests this Honorable Court to deny Holder's Petition for Rehearing and Rehearing En Banc.

Respectfully submitted,

RICHARD G. CALLAHAN
United States Attorney

/s/ John M. Bodenhausen
JOHN M. BODENHAUSEN
Assistant United States Attorney

15

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on December 13, 2013, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic case filing system upon the following attorneys for Petitioner-Appellant Holder:

Joseph W. Luby     Scott W. Braden
Death Penal Litigation Clinic  Arkansas Federal Public Defender

<u>/s/ John M. Bodenhausen</u>
JOHN M. BODENHAUSEN
Assistant United States Attorney